**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CARMEN LAFFEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **-v-** | § | Civil No. ___4:17-cv-1523___ |
| | § | |
| **HARRIS COUNTY,** | § | |
| | § | |
| **Defendant.** | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Carmen Laffey files this Original Complaint because Harris County discriminated against her because of her age. Ms. Laffey is the latest person the Public Defender's office has discriminated against because of age in a campaign to replace its investigative staff with younger, less qualified employees. First, there was Pedro Guzman, age 64. He applied for an open investigator position in April 2015. Mr. Guzman had 40 years of paid management and investigation experience. The hiring board was not even given the option to vote for Mr. Guzman because of his age. In fact, the conversations that took place immediately following Mr. Guzman's interview were discriminatory in nature, as members of the board questioned whether he could perform the job because he wore two hearing aids. Instead, Defendant hired Emilia Quintero, age 34, one of the youngest least-experienced applicants, who had only six (6) *months* of relevant experience.

After Ms. Quintero's hiring in May 2015, Ms. Laffey, who had not been approached regarding any performance concerns since July 2013, suddenly could do nothing right. As attorneys, Defendants knew exactly what to do to target Ms. Laffey for termination. Defendants

sought out complaints regarding Ms. Laffey's performance and used them against her, including a false allegation going all the way back to February 2015.  These alleged complaints led to Ms. Laffey's termination on February 4, 2016.  Ms. Laffey, age 52 at the time of her termination, was replaced by Administrative Assistant Ana Guirola-Ladd, then age 43, 9 years Ms. Laffey's junior.   Less than a year earlier, Ms. Guirola-Ladd was found to be unqualified to be an investigator for the Public Defender's Office.  Nothing had changed since that determination except that Ms. Guirola-Ladd was younger than Ms. Laffey.  In addition to hiring Ms. Quintero and Ms. Guirola-Ladd, the Public Defender's Office covertly hired Megan Harper, in her 30s, as an investigator, without posting the position to seek more qualified, experienced investigator.

The real reason for Ms. Laffey's termination was nothing more than age discrimination.

## I.
## PARTIES

1.      Carmen Laffey is an individual who resides in Harris County, Texas.

2.      Defendant Harris County is authorized by the laws of the State of Texas to operate the Harris County Public Defender's Office. Harris County Public Defender's Office is located at 1201 Franklin St., 13th Floor, Houston, Texas 77002, in Harris County, Texas. Defendant Harris County may be served with process by serving its chief executive officer, County Judge, Hon. Ed Emmett at 1001 Preston, Suite 911, Houston, Texas 77002.

## II.
## JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this case asserts claims for violations of Age Discrimination in Employment Act, which provides for federal question jurisdiction.  Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction over

state "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

4.      Venue is appropriate in the Southern District of Texas because the acts giving rise to this suit occurred in Harris County, Texas.

### III.
### FACTS

**A.      Ms. Laffey gave up her private firm to join Harris County Public Defender's Office as an investigator.**

5.      Ms. Laffey first began working for the Harris County Public Defender's Office in October 2011.

6.      Ms. Laffey anticipated being able to complete her career working for Harris County, leaving her private investigator firm to accept employment with Defendant.

7.      When beginning her career with Harris County, Ms. Laffey had nearly 30 years of relevant experience.

8.      Initially, Ms. Laffey worked cases for attorney Mark Hochglaube and a few other attorneys in the trial division.

9.      During that time, none of the attorneys in Mr. Hochglaube's division voiced any concerns regarding Ms. Laffey's work product or job performance.

10.      In or around the first quarter of 2012, based on Ms. Laffey's vast Juvenile experience, Chief Public Defender Alex Bunin and Division Chief – Juvenile Steve Halpert found Ms. Laffey to be the best fit for juvenile case investigations.

11.      Defendant's stated reason for Ms. Laffey's termination was performance.

12.     However, prior to her termination on February 4, 2016, Ms. Laffey had no disciplinary history, including no written warnings and no written performance improvement plans.

13.     The real reason for Ms. Laffey's termination was her age.

**B.      Ana Guirola-Ladd was not qualified to be an investigator for Defendant and Defendant knew this as early as April 2015.**

14.     In or around April 2015, Defendant sought to fill an investigator position in Harris County Public Defender's Office.

15.     Ana Guirola-Ladd, an Administrative Assistant for the Harris County Public Defender's Office, applied for the open investigator's position.

16.     Ms. Guirola-Ladd had no hands-on experience as an investigator, never possessed a private investigator's license, had never taken the private investigator's test, and had used more sick time leave than almost any other person in the office.

17.     The majority of the members of the hiring board voted against hiring Ms. Guirola-Ladd.

18.     Ms. Guirola-Ladd was not selected for the investigator position because she was not qualified.

**C.      Defendant began to hire younger investigators, even going so far as to make callous comments regarding an older, clearly better qualified applicant's disability.**

19.     Ultimately, the investigator position was filled by Emilia Quintero, age 34, in May 2015.

20.     Ms. Quintero was an investigator out of California.

21.     At the time of hire, Ms. Quintero had only six (6) *months* of paid experience as an investigator.

22.     However, another applicant, Pedro Guzman, was the clearly better qualified candidate with 40 years of paid management and investigation experience.

23.     Mr. Guzman, was approximately 60 years of age.

24.     Mr. Guzman worked in Harris County Adult and Juvenile Probation, as a Private Investigator for the civil and criminal bar, and knew the Houston area.

25.     Additionally, Mr. Guzman knew the laws of the state of Texas and was familiar with the mission of the Harris County Public Defender's Office.

26.     Accordingly, Mr. Guzman could hit the ground running without the need of any training from the other investigators.

27.     After Mr. Guzman's interview, members of the hiring board engaged in conversations related to Mr. Guzman's disability.

28.     Members of the interview panel questioned whether Mr. Guzman could perform the duties of the job because he wore two hearing aids.

29.     Ms. Laffey, a member of the hiring board, had recommended Mr. Guzman because he was a highly-qualified candidate.

30.     Yet, other members of the hiring board summarily dismissed him as a candidate.

31.     At the time that Ms. Quintero was hired, the applicant pool included a total of three Spanish-speaking men who were qualified and over age 55.

32.     Yet, Defendant hired one of the least qualified candidates, a candidate in her 30s.

33.     There was no vote by the hiring board.

34.     After the conclusion of all discussions related to the candidates, there was simply an email sent by Mr. Hochglaube asking, "How many of us vote for Emilia [Quintero]?"

35.     The email included no mention of any other potential candidates.

36. Accordingly, Ms. Quintero was the only candidate put up for consideration.

37. Thus, Ms. Quintero was hired by default.

38. This marked the beginning of the Public Defender's Office's move to go younger.

**D.** **Defendant, being attorneys, knew exactly what to do to build a case for Ms. Laffey's termination.   With false allegations and numerous misrepresentations, Defendant terminated Ms. Laffey on February 4, 2016.**

39. When Ms. Guirola-Ladd was not hired for the investigator position in May 2015, she complained to Mr. Halpert, and publicly expressed her dissatisfaction.

40. After the May 2015 hiring of the younger Ms. Quintero, as attorneys, Defendant knew what would be needed to build a case for Ms. Laffey's termination.

41. Subsequently, Defendant began conducting investigations into Ms. Laffey's work and Mr. Hochglaube and Mr. Halpert began to compile information.

42. After having heard no complaints from July 2013 until August 2015, suddenly in August 2015, Ms. Laffey was blind-sided by Mr. Hochglaube and Mr. Halpert with a litany of false allegations and misrepresentations.

43. For instance, Defendant alleged that Ms. Laffey attempted to push her work off on other employees.

44. However, Ms. Laffey was the investigator who would go above and beyond, often helping other investigators where she could as well as informing investigators and attorneys of other useful tools at their disposal.

45. By way of example, Ms. Laffey initiated the office's use of the TWC and DPS websites for the Public Defender's Office and was appointed administrator.

46.     Ms. Laffey's initiative in gaining access to these resources provided the Public Defender's Office with additional tools to locate witnesses, find pictures of witnesses, and to conduct criminal background checks.

47.     Additionally, the Public Defender's Office employed licensed counselors Kimberly Clark-Washington and Victoria Gibbons, who both informed Ms. Laffey that they felt underutilized.

48.     Believing the education, training, and certifications of these women might be useful in forming opinions in mitigation reports, Ms. Laffey took steps to inform the lawyers of their availability to help on cases.

49.     Also, during the August 2015 meeting, Defendant alleged that Ms. Laffey changed the unit's subpoena process in an attempt to push work off on others.

50.     In its efforts to find reasons to terminate Ms. Laffey, Defendant was now referencing a false allegation made by attorney Jackie Gravois, dating back to February 23, 2015, where Ms. Gravois alleged that Ms. Laffey was trying to push subpoenas off on the Administrative Staff.

51.     However, Mr. Hochglaube changed the subpoena process over 6 months earlier, in an email dated July 23, 2014.

52.     Clearly, this was a misrepresentation of the facts in an effort to find fault with Ms. Laffey, as Defendant prepared to terminate her employment and replace her with a younger investigator.

53.     Ms. Laffey was a team player who would take on additional work.

54.     By way of example, in or around January 2016, shortly before Ms. Laffey's termination, investigator Audrey Rife was out on leave.

55.     During that time, the attorneys who used Ms. Rife's services, in particular Leah Shapiro, continued to assign Ms. Rife subpoenas to be served.

56.     In order to help, Ms. Laffey served Ms. Shapiro's subpoenas to ensure timely service and to help reduce Ms. Rife's workload upon her return.

57.     At one point, Defendant reassigned attorneys and investigators.

58.     However, attorney Amanda Downing, after being assigned to another investigator, requested that she be reassigned to Ms. Laffey.

59.     Unfortunately, despite being a diligent investigator, Ms. Laffey was terminated on February 4, 2016.

**E.     The younger Ms. Guirola-Ladd, who Defendant had already determined was _not_ qualified to be an investigator, was suddenly hired as an investigator to replace the Ms. Laffey.**

60.     Subsequently, Ms. Guirola-Ladd was hired to replace Ms. Laffey.

61.     Ms. Guirola-Ladd, age 43, is nine (9) years younger than Ms. Laffey.

62.     Ms. Laffey was qualified for her position as an investigator with Harris County's Public Defender Office.

63.     Ms. Guirola-Ladd was less qualified that Ms. Laffey.

64.     Before joining the Public Defender's Office, Ms. Laffey was President of Mitigation, Investigations & Sentencing by Laffey, LLC, for over six (6) years.

65.     Prior to operating her own company, Ms. Laffey spent six (6) years as a Bond Investigator for the United States Pretrial Services Agency of the Southern District of Texas–Houston Division, which investigates federal arrestees to determine bond eligibility and supervises persons on bond.

66.     Prior to Ms. Laffey's career in the federal system, Ms. Laffey was a Harris County Adult Probation Officer, where she authored 66 presentence investigations during her tenure.

67.     Ms. Laffey is a licensed Private Investigator and a Certified Process Server with the State of Texas.

68.     From 2010 until 2011, Ms. Laffey also worked as an Adjunct Professor at the University of Houston-Clear Lake, teaching "Death Penalty" and "Probation and Parole."

69.     Ms. Laffey authored Chapter 8 – "Key Figures in Juvenile Court Proceedings" and co-authored Chapter 7 – "The Police and Juveniles in Texas" for the text book, Texas Juvenile Justice (Sage 2007).

70.     Ms. Laffey received her B.S. from West Texas State University (West Texas A&M) and obtained her Master's degree in Sociology from the University of Clear Lake.

71.     In hiring Ms. Guirola-Ladd, Harris County Public Defender's Office hired a younger, and significantly less qualified candidate.

72.     Indeed, they hired a candidate that had already been found unqualified less than a year earlier.  Nothing had changed.

73.     Ms. Guirola-Ladd's profile on the Public Defender's website shows her employment history as follows:



**Ana Guirola-Ladd**

Ana M. Guirola-Ladd, Administrative Assistant, joined the Public Defender's Office in April 2011. Prior to joining the PDO, Ms. Guirola was employed in medical administration for 15 years and as a paralegal for a bankruptcy attorney for six months. In addition to her full time job, Ms. Guirola has been a musical director for the past 12 years with a variety of venues in and around Houston, including Playhouse 1960, the Crighton Theater in Conroe, and with the Texas Medical Center Orchestra. Ms. Guirola earned her Applied Science Associates Degree for Paralegal Studies from Lonestar College in 2010.

74.    In addition, Harris County Public Defender's Office covertly hired yet another young investigator in her 30s, Megan Harper.

75.    Ms. Harper was hired to perform contract work on a case, but once the case was postponed for trial, her assignment should have ended with Harris County Public Defender's Office until the case was called for trial, as all investigative work was complete.

76.    However, Defendant called Ms. Harper back to work and assigned her to additional cases and she is currently performing "contract" work for the office.

77.    Harris County discriminated against Ms. Laffey because of her age in violation of the Age Discrimination in Employment Act.

78.    Harris County discriminated against Ms. Laffey because of her age in violation of the Texas Labor Code.

79.    Ms. Laffey filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission July 20, 2016, which was dual filed with the Texas Workforce Commission's Civil Right Division.  Ms. Laffey received the Notice of Right to Sue from the EEOC on February 28, 2017.  All conditions precedent to the bringing of this suit have been satisfied or have been fulfilled.

**IV.**
**ADEA DISCRIMINATION BY**
**DEFENDANT HARRIS COUNTY**

80.     Defendant's actions, including but not limited to its termination of Ms. Laffey's employment, were undertaken because of her age.

81.     Defendant's actions constitute violations of the Age Discrimination in Employment Act.

82.     Defendant replaced Ms. Laffey with a younger, less qualified individual.

83.     Due to Defendant's actions, Ms. Laffey has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

84.     Defendant's actions were intentional, malicious, and committed with reckless indifference to Ms. Laffey's federally protected rights.

**V.**
**TCHRA AGE DISCRIMINATION**
**BY DEFENDANT HARRIS COUNTY**

85.     Defendant's actions, including but not limited to its termination of Ms. Laffey's employment, were undertaken because of her age.

86.     Defendant's actions constituted a continuing violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, *et seq*.

87.     Defendant replaced Ms. Laffey with a younger, less qualified individual.

88.     Due to Defendant's actions, Ms. Laffey has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

89.     Defendant's actions were intentional, malicious, and committed with reckless indifference to Plaintiff's state-protected rights, entitling Plaintiff to compensatory and punitive damages under the Texas Labor Code, Chapter 21.

90.     Defendant's actions were done with malice or reckless indifference to the legally protected rights of Ms. Laffey.

## VI.
## JURY DEMAND

91.     Plaintiff exercises her right to a trial by jury.

## VII.
## DAMAGES

92.     WHEREFORE, Plaintiff Carmen Laffey respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, she be awarded:

    i.    Back pay, including but not limited to, lost wages, and other employment benefits;

    ii.    Front pay, including but not limited to wages, and other employment benefits;

    iii.    Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    iv.    Actual damages;

    v.    Punitive damages;

    vi.    Injunctive relief;

vii.    Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit;

viii.   Prejudgment and post-judgment interest as allowed by law; and

ix.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Summons be issued, and that upon a trial on the merits Plaintiff be awarded the relief requested in this Complaint and such other and further relief to which he may be justly entitled.

Respectfully submitted,

_____
Kalandra N. Wheeler (Attorney-in-Charge)
Texas Bar No. 24051512
Southern Dist. Texas Bar No. 2944827

Robert J. Wiley
Texas Bar No. 24013750
Southern Dist. Texas Bar No. 596499
*Board Certified in Labor and Employment Law*
*by the Texas Board of Legal Specialization*

ROB WILEY, P.C.
1651 Richmond Avenue
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334
kwheeler@robwiley.com
ATTORNEYS FOR PLAINTIFF